UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NAFL INVESTMENTS, LTD.,

    Plaintiff,

v.                               Case No: 2:18-cv-193-FtM-99MRM

VAN NESS FELDMAN LLP,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss for Failure to State a Claim (Doc. #10) filed on April 9, 2018. Plaintiff filed a Response in Opposition (Doc. #15) on April 16, 2018, and defendant filed a Reply (Doc. #18). For the reasons set forth below, the Motion is denied.

**I.**

This is a one-count legal malpractice suit in which NAFL Investments, Ltd, accuses the law firm Van Ness Feldman LLP, of negligently providing incorrect legal advice and representation in connection with a real estate project involving land owned by plaintiff in Collier County, Florida (the "Florida Land") and related litigation.[1] (Doc. #2.) More specifically, plaintiff alleges that defendant breached its fiduciary duties to plaintiff

---

[1] Van Ness removed the case to this Court under 28 U.S.C. § 1441, asserting the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. #1.)

and negligently drafted land transfer documents in a manner that (unbeknownst to plaintiff) made certain desirable options unavailable to plaintiff, resulting in litigation.

Plaintiff's Complaint alleges the following: Plaintiff hired defendant and its attorneys in 1985 in connection with a long-term project regarding the Florida Land, and the representation continues to this date. (Doc. #2, ¶¶ 10-11.) In 1985, the U.S. Department of the Interior approached plaintiff in Naples, Florida to discuss acquiring the Florida Land. The Government lacked a budget appropriation, so it proposed paying for the Florida Land by trading land in Arizona (the "Arizona Land") accompanied by long-term Government financing for any valuation differential. (Id., ¶ 12.) Plaintiff agreed to explore the proposal, and hired defendant to help it do so based on the firm's representation that it would provide plaintiff with "the highest quality professional services tailored to the needs and resources of plaintiff." (Id., ¶¶ 13-14.) Defendant holds itself out as having represented clients in land exchanges for more than 40 years. (Id., ¶ 15.)

Since plaintiff would be trading the Florida Land for unknown and yet-to-be developed land (the Arizona Land) in a long-term project, plaintiff sought to manage its risk by insisting that the project be "non-recourse," meaning that plaintiff could end its obligations at any time, for any or no reason, and simply walk away. (Doc. #2, ¶ 16.) Defendant advised plaintiff that the

project documents that it had drafted (collectively, the "Transfer Documents") gave plaintiff such a right, that is, to unilaterally cease making payments and walk away at any time with no obligation other than the transfer of ownership in any remaining collateral (i.e., "non-recourse"). (Id., ¶¶ 17, 19.) The non-recourse nature of the project was material to plaintiff's decision to enter the deal. In reliance on Van Ness' advice, plaintiff agreed to the 30-year exchange project and defendant finalized the Transfer Documents. (Id., ¶ 18.)

As is customary in real estate development projects, plaintiff sought the right (also documented by defendant in the Transfer Documents) to obtain a partial release of lien if the value of the collateral at the time of release was equal to not less than 130% of the amount of the debt. (Doc. #2, ¶ 20.) Instead, defendant drafted a maintenance of collateral term that, without plaintiff's knowledge, eliminated the non-recourse provision. (Id.) In addition, the Transfer Documents gave the Government the right to enforce the collateral term without having to foreclose or seek damages for nonpayment of the note. (Id.)

Some years later came the Great Recession, and plaintiff desired to exercise its right to walk away from the project. Therefore, with the help and advice of defendant, plaintiff notified the Government that it deemed itself released from all obligations under the Transfer Documents, including payment

obligations, and it was exercising its right to walk away without recourse, as defendant had continuously advised plaintiff it was permitted to do. (Doc. #2, ¶¶ 22-23.) Although the Government agreed that the note was non-recourse, the Government asserted that the documents allow a claim for specific performance because plaintiff had taken advantage of the release provisions for certain parcels and promised additional security in return.[2] (Id.) Plaintiff alleges that defendant failed to disclose to plaintiff that the Transfer Documents were written in such a manner that as soon as plaintiff obtained one partial release, plaintiff automatically "lost the essence of its bargain, i.e., the non-recourse provision." (Id.)

Rather than admit its drafting mistake, Van Ness continued to advise plaintiff that the Government's position was wrong, that the Transfer Documents were unambiguous, and that plaintiff could walk away without paying additional money or furnishing additional collateral. (Doc. #2, ¶ 25.) Defendant also advised plaintiff

---

[2] Prior to 2014, plaintiff sought two partial releases, one in 1998 and another in 2007, wherein defendant represented plaintiff and failed to disclose its drafting error. (Doc. #2, ¶¶ 27-28.) Plaintiff alleges that defendant knew or should have known of its drafting error at the time of the partial releases, yet defendant failed to disclose or correct it. Plaintiff alleges that Van Ness did not properly advise plaintiff of the risk it faced subsequent to exercising its partial release rights in 1998 and 2007. (Id., ¶ 27.) Thus, plaintiff alleges the partial releases triggered a perpetual obligation to maintain collateral far in excess of the value of the debt, converting the project to full recourse. (Id., ¶ 29.)

that plaintiff should not settle with the Government. (Id.) Defendant told plaintiff's that the Transfer Documents would be enforced by a court and that the Government would be ordered by to pay plaintiff's legal fees and costs. (Id.)

In 2014, the Government filed suit against plaintiff in Arizona. (Doc. #2, ¶ 26.) Plaintiff hired a law firm in Phoenix to assist in its defense, but continued to be advised by defendant, unaware of defendant's negligence and conflicts of interest. (Id.) The parties engaged in settlement discussions in 2015, and Van Ness advised plaintiff not to settle. (Id., ¶ 30.)

In early 2016, the Arizona court ruled in favor of the Government. (Doc. #2, ¶ 31.) After entry of final judgment, defendant advised plaintiff to appeal, but failed to disclose its erroneous draftsmanship, its foreseeable consequences, or defendant's conflicts. (Id.) Instead, defendant advised plaintiff that the court was wrong and plaintiff would likely succeed on appeal. (Id.) Following defendant's advice, plaintiff appealed and hired an appellate law firm for that purpose. (Id., ¶ 32.) Thereafter, the litigation risk caused by defendant's careless drafting became clear and settlement became the only viable option. (Id.) As a result, with defendant's approval, the case was settled at essentially full value in favor of the Government in August 2017. (Id.) In 2017, plaintiff discovered

that plaintiff should not settle with the Government. (Id.) Defendant told plaintiff's that the Transfer Documents would be enforced by a court and that the Government would be ordered by to pay plaintiff's legal fees and costs. (Id.)

In 2014, the Government filed suit against plaintiff in Arizona. (Doc. #2, ¶ 26.) Plaintiff hired a law firm in Phoenix to assist in its defense, but continued to be advised by defendant, unaware of defendant's negligence and conflicts of interest. (Id.) The parties engaged in settlement discussions in 2015, and Van Ness advised plaintiff not to settle. (Id., ¶ 30.)

In early 2016, the Arizona court ruled in favor of the Government. (Doc. #2, ¶ 31.) After entry of final judgment, defendant advised plaintiff to appeal, but failed to disclose its erroneous draftsmanship, its foreseeable consequences, or defendant's conflicts. (Id.) Instead, defendant advised plaintiff that the court was wrong and plaintiff would likely succeed on appeal. (Id.) Following defendant's advice, plaintiff appealed and hired an appellate law firm for that purpose. (Id., ¶ 32.) Thereafter, the litigation risk caused by defendant's careless drafting became clear and settlement became the only viable option. (Id.) As a result, with defendant's approval, the case was settled at essentially full value in favor of the Government in August 2017. (Id.) In 2017, plaintiff discovered

defendant's negligence and realized that its advice had been wrong all along. (Id., ¶¶ 3, 19.)

Under the legal malpractice count, plaintiff alleges the following breach:

> Defendant breached both its fiduciary duties and heightened level of professional care by, among other things, (1) structuring and drafting documents and continuing to advise on the project in a way that failed to provide non-recourse protection for plaintiff; (2) willfully or recklessly failing to disclose its drafting error or conflicts to plaintiff; and (3) furnishing negligent representation and advice in litigation.

(Doc. #2, ¶ 39.) Plaintiff alleges that it never knowingly agreed to a deal with the Government that was anything except non-recourse, but as a result of defendant's continuous advice, counsel, conflicts, and willful or reckless failure to disclose material facts over more than 20 years, plaintiff has been damaged in excess of $90 million. (Doc. #2, ¶¶ 33, 40.)

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

above the speculative level." Id. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

Defendant moves to dismiss, arguing that the Complaint does not adequately allege a proximate causal connection between the

breach of duty and damages and does not adequately allege that Van Ness represented plaintiff in the Arizona litigation. Defendant also argues that the Complaint is a shotgun pleading because both legal malpractice and breach of fiduciary duty are improperly pled under one count for "legal malpractice."

**A. Judicial Notice**

At the outset, the Court notes that in making its arguments for dismissal, defendant requests that this Court take judicial notice of the entirety of the Arizona litigation, including factual findings and deposition testimony. (Doc. #10, n. 1.) Van Ness relies heavily on the facts from the Arizona litigation to show that the allegations in the Complaint are incorrect and oftentimes contradicted by the Arizona record.

"The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "The court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (internal citation omitted). Additionally, the fact to be noticed must be "relevant to a determination of the claims

presented in a case." Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004).

The Court declines to take judicial notice of the contents of the Arizona litigation because such documents and evidence are immaterial to the Court's determination of the Motion to Dismiss. The allegations in plaintiff's Complaint alone state a plausible claim for relief, as discussed below. Any argument that defendant wishes to make which relies on documents outside the four corners of the Complaint may be raised as an affirmative defense or later in support of summary judgment.[3] See CFL Holdings, LLC v. Halafax Landing Condo, LLC, No. 6:08-cv-1094-Orl-GJK, 2008 WL 11335103, *3 (M.D. Fla. Oct. 27, 2008).

**B. Failure to State a Claim**

"The plaintiff in a legal malpractice action must prove: (1) the employment of the attorney; (2) the lawyer's neglect of a reasonable duty; and (3) that the attorney's negligence was the proximate cause of loss to the client." Lenahan v. Russell L. Forkey, P.A., 702 So. 2d 610, 611 (Fla. 4th DCA 1997). Defendant challenges the first and third element, arguing that Van Ness was not employed to represent plaintiff in the Arizona litigation

---

[3] Defendant relies on numerous docket entries from the Arizona litigation, but did not submit any of the documents to the Court. Furthermore, the Court will not make a determination at this time whether certain sworn deposition testimony from that Arizona litigation will be admissible in this case.

(rather, Van Ness was only the transactional counsel and not "counsel of record"), and the Complaint does not allege a sufficient causal connection between the alleged breach and corresponding damages. Defendant asserts that plaintiff is attempting to place blame that lies with plaintiff's counsel in the Arizona litigation – Fennemore Craig – on Van Ness' shoulders, resulting in a shotgun pleading. Thus, defendant believes that any allegations of negligence in connection with the Arizona litigation should be disregarded.

Attorneys are only liable for acts or omissions that occur within the scope of their employment. See Lane v. Cold, 882 So. 2d 436, 438 (Fla. 1st DCA 2004) ("With respect to establishing the first element, it is not sufficient merely to show that an attorney-client relationship existed between the parties, it is essential that the plaintiff show that the relationship existed upon which the malpractice claim is based."). Contrary to defendant's argument that the Complaint does not adequately allege a connection between Van Ness' negligence and the Arizona litigation, the Complaint does state that Van Ness advised plaintiff throughout the Arizona litigation, as well as during settlement of that case. See Doc. #2, ¶¶ 11, 23-26, 30-33. The fact that Van Ness never made an appearance as counsel of record in that case and was not litigation counsel is not dispositive in deciding whether plaintiff has stated a claim. "The test Florida

courts have used to determine whether a lawyer-client relationship exists in the absence of a formal retainer 'is a subjective one and hinges upon the client's belief that he is *consulting* a lawyer in that capacity and his manifested intention is to seek professional legal advice.'"  Jackson v. BellSouth Telecomm'n, 372 F.3d 1250, 1281 (11th Cir. 2004) (emphasis in original) (quoting Bartholomew v. Bartholomew, 611 So. 2d 85, 86 (Fla. 2d DCA 1992)).  Plaintiff has alleged as much.[4]  The Complaint alleges an ongoing attorney-client relationship since 1985 and that this legal malpractice action arises out of defendant's legal advice in both the real estate project and the related Arizona litigation.

Furthermore, the Court disagrees with defendant's argument that plaintiff fails to sufficiently allege a causal connection between defendant's negligence and plaintiff's injuries.  Plaintiff alleges that he relied on defendant's advice in entering the real estate project with the understanding that the project was non-recourse.  Such a term was material to plaintiff entering into the deal with the Government, and plaintiff states that due to defendant's negligence, the project terms were not what it had

---

[4] Defendant's Motion to Dismiss states: "If Van Ness Feldman was not litigation counsel, it cannot be held liable for any negligent acts that occurred during the course of that litigation.  In that regard, the allegations regarding scope of employment and duty are defective."  (Doc. #10, p. 14.)  Yet, defendant cites no case law in support of such a proposition and indeed Florida case law is to the contrary.  See Jackson, 372 F.3d at 1281.

agreed to and therefore plaintiff was exposed to even greater financial risk because of defendant's negligence. (Doc. #2, ¶¶ 16-21.) The Court understands that defendant disagrees with plaintiff's dissertation of the facts and has defenses to the allegations. Those disputes may not be resolved in a motion to dismiss.

The Court also rejects defendant's argument that plaintiff has improperly mixed allegations regarding breach of fiduciary duty and legal malpractice, and presented both theories in a single count for legal malpractice. This type of pleading is permissible, as a fiduciary relationship exists between an attorney and client, the neglect of which may give rise to a legal malpractice suit. See Tambourine Comercio Internacional SA v. Solowsky, 312 F. App'x 263, 281 (11th Cir. 2009) ("[I]f a breach of fiduciary duty claim does involve an attorney-client relationship, it is considered a malpractice action."); Elkind v. Bennett, 958 So. 2d 1088, 1092 (Fla. 4th DCA 2007) (noting that Florida recognizes the fiduciary obligation of an attorney, which duty may be "enforced as an aspect of legal malpractice, as an essential element of the claim is the breach of a reasonable duty"); FDIC v. Martin, 801 F. Supp. 617, 619 (M.D. Fla. 1992) ("The attorney client relationship does, as Plaintiff maintains, place a fiduciary duty on the part of the attorney.").

In sum, plaintiff plausibly alleges the basic elements of legal malpractice, i.e., that plaintiff hired Van Ness, that Van Ness had a duty as plaintiff's attorney, and plausibly alleges what actions constituted negligence on the part of the firm. Thus, the Motion to Dismiss is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss for Failure to State a Claim (Doc. #10) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __6th__ day of June, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record